**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID COYNE, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> JETBLUE AIRWAYS CORPORATION, <br><br> *Defendant*. | Case No. 1:26-cv-3487 <br><br> **COMPLAINT - CLASS ACTION** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff David Coyne ("Plaintiff") individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Defendant JetBlue Airways Corporation ("JetBlue" or "Defendant").

**NATURE OF THE ACTION**

1.     JetBlue is one of the largest commercial airlines in the United States and conducts a substantial portion of its business through its website (http://www.jetblue.com), and mobile application.[1]

2.     Consumers use JetBlue's digital platforms to search for flights, review fare information, purchase airline tickets, manage reservations, and access other travel-related services. In doing so, consumers communicate sensitive information concerning their travel plans, purchasing decisions, personal information, and online activities.

3.     Unknown to Plaintiff and Class Members, JetBlue deploys or permits the deployment of third-party tracking technologies that monitor, record, analyze, and disclose users' communications and interactions with JetBlue's digital platforms to third parties.

4.     Through these technologies, third parties receive information regarding users' browsing activity, travel searches, booking activity, device identifiers, internet protocol

---

[1] JetBlue Airways Corp., https://www.jetblue.com (last visited June 5, 2026).

addresses, session information, and other communications exchanged between consumers and JetBlue.

5.     The interception and disclosure of these communications occur contemporaneously with users' interactions with JetBlue's website and mobile application and without the clear and informed consent required by law.

6.     The information disclosed through these tracking technologies is valuable. It allows third parties to perform behavioral analytics, monitor consumer activity, develop user profiles, personalize content, optimize digital experiences, and derive commercial value from consumers' interactions with JetBlue's digital platforms.

7.     JetBlue benefits from these disclosures by obtaining analytics, personalization, optimization, marketing, and other commercial services derived from Plaintiff's and Class Members' communications and data.

8.     Consumers reasonably expect that their communications with an airline concerning prospective travel, flight searches, booking activity, and related personal information will remain private and will not be contemporaneously disclosed to unrelated third parties without their knowledge or consent.

9.     Plaintiff and Class Members did not knowingly authorize JetBlue to permit third parties to intercept, record, analyze, or otherwise receive their communications in the manner alleged herein.

10.     By deploying and utilizing these tracking technologies, JetBlue violated Plaintiff's and Class Members' privacy rights, breached obligations arising from its relationship with consumers, and engaged in conduct prohibited by federal and state law.

11.     Plaintiff brings this action individually and on behalf of all similarly situated persons seeking statutory damages, actual damages, restitution, disgorgement, declaratory relief, injunctive relief, attorneys' fees, costs, and all other relief available under applicable law.

**PARTIES**

12.    Plaintiff David Coyne is a citizen of the State of Nevada and resides in Clark County, Nevada. During the relevant period, in or around July 2025, Plaintiff visited JetBlue's website to search for, review, and book a flight from Las Vegas, Nevada to Boston, Massachusetts. In doing so, Plaintiff provided JetBlue with sensitive personal and financial information, including his name, address, and payment card information, along with travel itinerary information necessary to complete the transaction.

13.    Plaintiff reasonably believed that his communications with JetBlue would remain private and would be transmitted only between himself and JetBlue for purposes of completing his travel purchase. Plaintiff was unaware that JetBlue allegedly deployed or permitted the deployment of third-party tracking technologies capable of intercepting, transmitting, recording, analyzing, or otherwise monetizing his communications and browsing activity.

14.    Following his transaction, Plaintiff experienced an attempted fraudulent use of his credit card, an increase in unsolicited spam calls, and an unsolicited communication from a financial institution regarding purported loan approval despite never applying for such a loan. Had Plaintiff known that his communications and behavioral data would allegedly be transmitted to third parties and utilized for analytics, personalization, and potentially individualized pricing strategies, he would have declined to transact with JetBlue through its website or would have utilized an alternative booking method.

15.    Defendant JetBlue Airways Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 27-01 Queens Plaza North, Long Island City, New York 11101.

**JURISDICTION AND VENUE**

16.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), is a class action involving 100 or more class members, and because Plaintiff and Defendant are citizens of

different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17.    The Court has personal jurisdiction over Defendant because Defendant is headquartered in the State of New York; Defendant conducts significant business in the State of New York, thus availing itself to New York's markets; Defendant has sufficient minimum contacts with the state of New York; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in New York.

18.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because, *inter alia,* a substantial part of the events or omissions giving rise to the conduct alleged herein occurred in, were directed to, and/or emanated from this district; Defendant transacts substantial business and has agents, in this district; a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A.    Overview of JetBlue's Business

19.    JetBlue Airways Corporation ("JetBlue") is one of the largest commercial airlines in the United States and conducts a substantial portion of its business through its website, www.jetblue.com, and mobile application.[2]

20.    Consumers use JetBlue's digital platforms to search for flights, compare fares, purchase airline tickets, manage reservations, check in for flights, access loyalty-program information, and obtain other travel-related services.

21.    To utilize these services, consumers communicate significant amounts of personal and travel-related information to JetBlue, including names, email addresses, telephone numbers, travel itineraries, departure and destination locations, travel dates, payment information, loyalty-program information, and other identifying information.

---

[2] JetBlue Airways Corp., https://www.jetblue.com (last visited June 5, 2026).

22.    Consumers interacting with airline booking platforms reasonably expect that communications exchanged in connection with researching and purchasing air travel will remain private and will not be contemporaneously disclosed to unrelated third parties without their knowledge or consent.

23.    The communications exchanged through JetBlue's digital platforms frequently reveal highly personal information concerning a consumer's travel plans, family relationships, business activities, purchasing behavior, and geographic movements.

24.    Because airline travel requires consumers to disclose substantial personal information and engage in financial transactions, users reasonably expect a heightened degree of privacy when communicating with an airline through its digital platforms.

25.    JetBlue publicly represents that customer privacy is an important component of its business operations and maintains privacy disclosures concerning the collection and use of consumer information.

26.    Despite those representations, JetBlue deploys, embeds, or permits the deployment of third-party tracking technologies that intercept, collect, transmit, analyze, and monetize information concerning users' interactions with JetBlue's digital platforms.

**B.    JetBlue's Use of Third-Party Analytics and Tracking Technologies**

27.    JetBlue utilizes third-party analytics, personalization, advertising, and customer-experience technologies throughout its website and mobile application.

28.    These technologies operate while consumers browse JetBlue's digital platforms and are designed to collect, record, analyze, and transmit information concerning user activity and interactions.

29.    The information collected includes page visits, user interactions, flight searches, booking activity, session information, device information, browser information, internet protocol addresses, referral information, and other data generated through a user's interaction with JetBlue's digital platforms.

30.    One such vendor utilized by JetBlue is FullStory, Inc. ("FullStory"), a company that provides behavioral analytics and digital-experience monitoring services. According to FullStory, its technology enables businesses to capture and analyze user interactions occurring on websites and mobile applications.[3]

31.    FullStory publicly identifies JetBlue as a customer and states that JetBlue utilizes FullStory's platform to evaluate customer experiences and optimize interactions occurring on JetBlue's digital properties.[4]

32.    FullStory's technology is designed to capture and analyze user activity occurring during website and mobile application sessions, including clicks, navigation activity, page interactions, and other user behavior.[5]

33.    JetBlue also utilizes Dynamic Yield, a personalization platform owned by Mastercard. Dynamic Yield publicly identifies JetBlue among its customers.[6]

34.    Dynamic Yield markets technology designed to analyze customer behavior, audience characteristics, browsing activity, and user preferences to create personalized digital experiences and targeted content.[7]

35.    Dynamic Yield further promotes its ability to segment users based on behavioral attributes and deliver individualized experiences based upon information collected during users' interactions with digital platforms.[8]

---

[3] FullStory, Digital Experience Intelligence Platform, FULLSTORY, https://www.fullstory.com (last visited June 5, 2026).

[4] FullStory, JetBlue Reduces Payment Errors by 20%, FULLSTORY, https://www.fullstory.com/customer-story/travel-hospitality/jetblue/ (last visited June 5, 2026).

[5] *Id.*

[6] Dynamic Yield, Clients, DYNAMIC YIELD, https://www.dynamicyield.com/clients/ (last visited June 5, 2026).

[7] Dynamic Yield, Travel Industry Personalization Solutions, DYNAMIC YIELD, https://www.dynamicyield.com/travel/ (last visited June 5, 2026).

[8] *Id.*

36.    Upon information and belief, JetBlue utilizes additional third-party analytics, advertising, personalization, and customer-experience technologies capable of collecting and receiving information concerning users' communications and interactions.

37.    These technologies operate automatically while consumers interact with JetBlue's website and mobile application and permit third parties to obtain information concerning users' communications and activity occurring on JetBlue's digital platforms.

**C.    Interception and Disclosure of Electronic Communications**

38.    When consumers access JetBlue's website or mobile application, electronic communications are exchanged between the consumer's browser or device and JetBlue's servers.

39.    These communications include requests for webpages, flight-search activity, itinerary selections, booking activity, session information, device identifiers, internet protocol addresses, and other information generated through the user's interaction with JetBlue's digital platforms.

40.    During those interactions, JetBlue's third-party tracking technologies receive, access, collect, or otherwise obtain information concerning the communications exchanged between consumers and JetBlue.

41.    The disclosures occur contemporaneously with consumers' communications and while consumers are actively interacting with JetBlue's website and mobile application.

42.    Through these technologies, third parties obtain information concerning how consumers navigate JetBlue's website, what travel options they review, which flights they search for, how they progress through the booking process, and how they otherwise interact with JetBlue's digital platforms.

43.    The information disclosed permits the creation of detailed behavioral profiles concerning consumers' travel interests, purchasing behavior, browsing activity, and engagement with JetBlue's services.

44. The information disclosed is commercially valuable because it facilitates behavioral analytics, audience segmentation, personalization, customer-experience optimization, targeted advertising, and other commercial uses.

45. The disclosures occur automatically and are not necessary to complete a consumer's requested airline transaction.

46. Consumers reasonably believe that their communications are being exchanged solely with JetBlue and are unaware that unrelated third parties may simultaneously receive information concerning those communications.

47. Plaintiff and Class Members did not knowingly authorize unrelated third parties to contemporaneously intercept, record, analyze, or otherwise receive their communications with JetBlue.

**D.      Inadequate Notice and Lack of Consent**

48. JetBlue maintains privacy policies and disclosures concerning consumer information and online activity.

49. However, JetBlue fails to adequately disclose the full nature, scope, extent, and operation of the third-party tracking technologies embedded within its digital platforms.

50. JetBlue further fails to adequately disclose that consumers' communications may be contemporaneously intercepted, recorded, transmitted, analyzed, or otherwise disclosed to third parties while consumers interact with JetBlue's website and mobile application.

51. JetBlue does not clearly disclose what communications are transmitted, which third parties receive those communications, the manner in which those communications are disclosed, or the purposes for which the communications are used.

52. Any purported disclosures fail to provide consumers with sufficient information to understand the scope of the interception and disclosure occurring through JetBlue's digital platforms.

53. Plaintiff and Class Members therefore lacked sufficient information to provide informed consent to the interception and disclosure of their communications.

54.    Any purported consent obtained by JetBlue was ineffective because it was not informed, specific, or adequately disclosed.

### E.    Injury and Damages

55.    Plaintiff and Class Members possess legally protected privacy interests in their electronic communications.

56.    Plaintiff and Class Members further possess legally protected interests in controlling the collection, use, disclosure, and commercial exploitation of information generated through their online activities.

57.    Defendant's conduct deprived Plaintiff and Class Members of the ability to control the disclosure and use of their communications and information.

58.    Defendant obtained valuable commercial benefits through its collection, disclosure, retention, analysis, and use of Plaintiff's and Class Members' communications and behavioral data.

59.    Defendant's conduct enabled the creation of valuable analytics, personalization, optimization, behavioral, and customer-intelligence datasets derived from Plaintiff's and Class Members' interactions with JetBlue's digital platforms.

60.    Plaintiff and Class Members suffered injuries recognized by federal and state law, including the unauthorized interception, disclosure, and exploitation of their electronic communications and personal information.

61.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered damages and are entitled to all relief available under applicable law.

### CLASS ALLEGATIONS

62.    Plaintiff brings this action on behalf of herself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
> All citizens of the United States who used JetBlue's website and/or mobile application and whose communications and/or data were shared with third parties during the applicable limitations period.

**Nevada Subclass**

All citizens of the State of Nevada who used JetBlue's website and/or mobile application and whose communications and/or data were shared with third parties during the applicable limitations period.

63.    The above defined classes are collectively referred to as the "Class." Plaintiff reserves the right to re-define the Class prior to class certification. Plaintiff reserves the right to modify these class definitions as discovery in this action progresses.

64.    Excluded from the Class are Defendant and its affiliates, officers, directors, assigns, successors, and the Judge(s) assigned to this case.

65.    **Numerosity**: While the precise number of class members has not yet been determined, members of the Classes are so numerous that their individual joinder is impracticable, as the proposed Classes appear to include many thousands of members who are geographically dispersed.

66.    **Typicality**: Plaintiff's claims are typical of Class Members' claims. Plaintiff and all Class Members were injured through Defendant's alleged uniform misconduct, and Plaintiff's claims are based on the same legal theories as the claims of the Class Members she seeks to represent. Accordingly, Plaintiff's claims are typical of Class Members' claims.

67.    **Adequacy**: Plaintiff's interests are aligned with the Class she seeks to represent. Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and her counsel intend to prosecute this action vigorously. The Class's interests are well-represented by Plaintiff and undersigned counsel.

68.    **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class Members' claims. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for Class Members individually to effectively redress Defendant's alleged

wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

69. **Commonality and Predominance:** The following questions are common to all Class Members and predominate over any questions affecting only individual Class Members:

- whether Defendant engaged in the wrongful conduct alleged herein;
- whether Defendant's conduct resulted in the disclosure of Plaintiff's and other Class members' sensitive information and communications;
- whether Defendant violated privacy rights and invaded Plaintiff's and Class members' privacy;
- whether Defendant breached implied contracts with Plaintiff and Class members;
- whether Defendant violated the New York GBL;
- whether Defendant violated Nevada's Deceptive Trade Practices Act; and
- whether Plaintiff and class members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

70. Given that Defendant engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

## CAUSES OF ACTION

### COUNT I
### Violations of the Electronic Communications Privacy Act,
### 18 U.S.C. § 2510 *et seq.*
### (On Behalf of Plaintiff and the Nationwide Class)

71.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

72.     The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*, prohibits the intentional interception of electronic communications and the intentional disclosure or use of the contents of unlawfully intercepted communications.

73.     Plaintiff and Class Members transmitted electronic communications to and through JetBlue's website and mobile application.

74.     Those communications constitute "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

75.     Through the use of third-party tracking technologies, including but not limited to behavioral analytics, personalization, and session-monitoring tools, Defendant intentionally intercepted, disclosed, and/or procured the interception of Plaintiff's and Class Members' electronic communications.

76.     Defendant caused the contents of Plaintiff's and Class Members' communications to be contemporaneously transmitted to third parties during the course of the communications.

77.     The third parties receiving Plaintiff's and Class Members' communications were not parties to those communications.

78.     Defendant knew, or reasonably should have known, that the tracking technologies operating on its digital platforms transmitted communications and communication content to third parties.

79.     Plaintiff and Class Members did not provide prior express consent to the interception and disclosure of their communications.

80.     Defendant's conduct violated 18 U.S.C. § 2511(1).

81.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members suffered injury and are entitled to statutory damages, actual damages, equitable relief, attorneys' fees, costs, and all other relief authorized by 18 U.S.C. § 2520.

## COUNT II
### Invasion of Privacy—Intrusion Upon Seclusion
### (On Behalf of Plaintiff and the Nationwide Class)

82.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

83.    Plaintiff and Class Members had a reasonable expectation of privacy in the communications exchanged with JetBlue through its website and mobile application that Defendant disclosed without authorization.

84.    The communications at issue included Plaintiff's and Class Members' private and confidential information concerning their travel plans, flight searches, itinerary selections, purchasing behavior, personal information, and online activities.

85.    Plaintiff and Class Members reasonably expected that such communications would remain between themselves and JetBlue and would not be contemporaneously disclosed to unrelated third parties without their knowledge or authorization.

86.    Defendant intentionally deployed, utilized, authorized, or permitted tracking technologies that intercepted, recorded, monitored, collected, analyzed, and disclosed Plaintiff's and Class Members' communications and interactions with JetBlue's digital platforms.

87.    Through these technologies, Defendant enabled third parties to obtain access to information concerning Plaintiff's and Class Members' communications, browsing activity, travel-related searches, booking activity, and other private information.

88.    Defendant's conduct constituted an intentional intrusion into Plaintiff's and Class Members' private affairs, concerns, communications, and seclusion.

89.    The intrusion would be highly offensive to a reasonable person because consumers do not reasonably expect that their communications with an airline concerning prospective travel,

travel arrangements, purchasing decisions, and related personal information will be intercepted and disclosed to unrelated third parties for commercial purposes.

90. Defendant's conduct was intentional, knowing, reckless, and/or undertaken with conscious disregard for Plaintiff's and Class Members' privacy rights.

91. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members suffered injury, including the invasion of their privacy rights, the loss of control over their private information and communications, and the unauthorized disclosure and exploitation of their information.

92. Plaintiff and Class Members are entitled to actual damages, nominal damages, punitive damages where permitted, injunctive relief, equitable relief, and all other relief available under applicable law.

## COUNT III

### Violations of New York General Business Law
### N.Y. Gen. Bus. Law § 349 ("GBL")
### (On Behalf of Plaintiff and the Nationwide Class)

93. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

94. Section 349 of the New York GBL provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a).

95. Defendant's conduct was consumer-oriented and affected the public at large.

96. Defendant, while operating in New York, engaged in deceptive acts and practices in the conduct of business, trade and commerce, and the furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a). This includes but is not limited to the following:

97. JetBlue designed, implemented, directed, managed, approved, and controlled the privacy, tracking, analytics, personalization, and data-sharing practices challenged herein from its corporate headquarters located in Long Island City, New York.

98. The decisions regarding the deployment of third-party tracking technologies, the collection and disclosure of consumer communications, the content of JetBlue's privacy disclosures, and the operation of JetBlue's website and mobile application emanated from and were directed from New York.

99. Defendant marketed and operated its website and mobile application as platforms through which consumers could search for and purchase airline travel while failing to adequately disclose that consumers' communications and data would be intercepted, recorded, analyzed, transmitted, and disclosed to third parties.

100. Defendant omitted material facts concerning the existence, operation, scope, and commercial purpose of the tracking technologies embedded within its digital platforms.

101. Defendant further omitted material facts concerning the categories of information transmitted to third parties, the identities of the third parties receiving such information, and the purposes for which such information was collected, analyzed, and utilized.

102. These omissions and representations were materially misleading and likely to mislead a reasonable consumer acting under the circumstances.

103. Reasonable consumers would consider it important when deciding whether to utilize JetBlue's website and mobile application to know that their communications and interactions would be contemporaneously disclosed to third parties for analytics, personalization, behavioral monitoring, profiling, advertising, and related commercial purposes.

104. Plaintiff seeks relief under N.Y. Gen. Bus. Law § 349(h), including actual damages or statutory damages, where available, injunctive relief, attorneys' fees, costs, and such other relief as the Court deems proper.

105. Plaintiff and Class Members further seek appropriate injunctive relief to enjoin the allegedly unlawful acts and practices described above to the extent permitted by law.

106. Plaintiff and Class Members also seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, and such other relief as may be available under N.Y. Gen. Bus. Law § 349.

## COUNT IV

**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**

107. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

108. When Plaintiff and Class Members accessed Defendant's website and mobile application and provided personal information and communications to Defendant, an implied contract arose between the parties.

109. Under that implied agreement, Plaintiff and Class Members provided valuable consideration to Defendant, including personal information, communications, consumer data, and business patronage.

110. In exchange, Defendant implicitly agreed to collect, use, store, and disclose Plaintiff's and Class Members' information in a manner consistent with consumers' reasonable expectations and applicable law.

111. Defendant further implicitly agreed not to disclose Plaintiff's and Class Members' communications to unrelated third parties without adequate notice and authorization.

112. Plaintiff and Class Members fully performed their obligations under the implied agreement.

113. Defendant breached the implied agreement by intercepting, transmitting, disclosing, and otherwise permitting third parties to obtain Plaintiff's and Class Members' communications and information without adequate authorization.

114. As a direct and proximate result of Defendant's breach, Plaintiff and Class Members suffered damages.

115. Plaintiff and Class Members are entitled to all damages and other relief available under applicable law.

## COUNT V
### Violations of Nevada's Deceptive Trade Practices Act
### Nev. Rev. Stat. §§ 598.0915 *et seq*. and 41.600
### (On Behalf of Plaintiff and the Nevada Subclass)

116. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

117. At all relevant times, Defendant advertised, marketed, and sold airline transportation services to Nevada consumers, including Plaintiff, through its website and mobile application.

118. Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0915 *et seq*., prohibits deceptive acts and practices in connection with the sale or advertisement of goods and services. Nev. Rev. Stat. § 41.600 provides a private right of action to any person who is a victim of consumer fraud or a deceptive trade practice.

119. Defendant represented, expressly and by implication, that consumers could use its website to search for and purchase airline travel while their personal information and online communications would be handled in accordance with Defendant's privacy representations and reasonable consumer expectations.

120. Contrary to those representations and omissions, Defendant deployed, utilized, authorized, or permitted tracking technologies that intercepted, recorded, monitored, collected, analyzed, and disclosed Plaintiff's and Class Members' communications and interactions with JetBlue's digital platforms.

121. Defendant further failed to disclose material facts, including that information generated through consumers' interactions with its digital platforms, including flight searches, browsing behavior, session activity, device identifiers, internet protocol addresses, geolocation information, and other behavioral data, could be transmitted to third parties and utilized for behavioral analytics, audience segmentation, personalization, customer-experience optimization, targeted advertising, and other commercial uses.

122.   These omissions and representations were material. A reasonable consumer would consider it important in deciding whether to use Defendant's digital platforms and disclose personal and financial information to know that such information and communications would be shared with third parties and commercially exploited for purposes beyond completing the requested transaction.

123.   Defendant knew or should have known that consumers, including Plaintiff and members of the Nevada Subclass, would reasonably believe that their communications were being exchanged solely with Defendant for the purpose of researching and purchasing airline transportation and would not be contemporaneously disclosed to unrelated third parties for undisclosed commercial purposes.

124.   Plaintiff and members of the Nevada Subclass lacked knowledge of these material facts and reasonably relied upon Defendant's omissions and deceptive practices in choosing to use Defendant's digital platforms and provide their personal and financial information.

125.   Had Plaintiff and members of the Nevada Subclass known the true nature and scope of Defendant's alleged data collection, sharing, commercialization, and surveillance practices they would not have used Defendant's website, would have purchased travel through another carrier or platform, or would have taken steps to prevent the collection and disclosure of their information.

126.   As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff and members of the Nevada Subclass suffered injury, including but not limited to:

      a.   the unauthorized interception and disclosure of their electronic communications;

      b.   invasion of their privacy;

      c.   loss of control over valuable personal and behavioral information;

      d.   loss of the economic value of that information;

e.  payment for services under circumstances in which they were deprived of material information necessary to make an informed purchasing decision;

f.  Defendant's unjust enrichment through the commercialization and monetization of such information; and

g.  other actual damages according to proof.

127.  Pursuant to Nev. Rev. Stat. § 41.600 and all other applicable provisions of Nevada law, Plaintiff and the Nevada Subclass seek actual damages, equitable and injunctive relief, restitution, disgorgement, attorneys' fees and costs where authorized by law, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT VI
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class)

128.  Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

129.  This claim is pleaded in the alternative to the breach of implied contract claim.

130.  Defendant knowingly received and retained benefits derived from Plaintiff's and Class Members' communications, personal information, behavioral data, and online activity.

131.  Defendant used and monetized that information through analytics, personalization, optimization, behavioral monitoring, and related commercial activities.

132.  Defendant's retention of those benefits is inequitable because the benefits were obtained through the unauthorized interception, collection, disclosure, and exploitation of Plaintiff's and Class Members' communications and information.

133.  Under principles of equity and good conscience, Defendant should not be permitted to retain those benefits.

134.  Plaintiff and Class Members are entitled to restitution, disgorgement, and all other equitable relief available under applicable law.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully requests that the Court grant the following relief:

A.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as the class representative and undersigned counsel as class counsel;

B.    Award Plaintiff and class members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C.    Award declaratory and injunctive relief as permitted by law or equity to assure that class members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D.    Award Plaintiff and class members pre-judgment and post-judgment interest to the maximum extent allowable;

E.    Award Plaintiff and class members reasonable attorneys' fees, costs, and expenses, as allowable; and

F.    Award Plaintiff and Class Members such other relief as the Court deems just and proper under law or in equity.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  June 10, 2026                         Respectfully submitted,

                                             /s/ Tina Wolfson
                                             Tina Wolfson (NY Bar No. 5436043)
                                             twolfson@ahdootwolfson.com
                                             **AHDOOT & WOLFSON, PC**
                                             2600 W. Olive Ave., Suite 500
                                             Burbank, CA 91505
                                             Telephone: (310) 474-9111
                                             Facsimile: (310) 474-8585

                                             Bradley K. King (NY Bar No. 5585336)
                                             bking@ahdootwolfson.com
                                             **AHDOOT & WOLFSON, PC**

521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: (917) 336-0171
Facsimile: (917) 336-0177

*Counsel for Plaintiff and the Proposed Class*